### IN THE UNITED STATES DISTRICT COURT
### OF KANSAS

| | |
|---|---|
| **JUSTIN SOETAERT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:20-cv-2153 |
| **AMSTED RAIL COMPANY, INC. d/b/a** ) | |
| **GRIFFIN WHEEL COMPANY** ) | |
|   Serve: Registered Agent: ) | Jury Demand |
|     The Corporation Company, Inc. ) | |
|     112 S.W. 7th Street Suite 3C ) | |
|     Topeka, Kansas 66603 ) | |
| ) | |
| **Defendant.** ) | |

### COMPLAINT

COMES NOW Plaintiff Justin Soetaert ("Soetaert"), by and through his counsel, and for his claims against Defendant Amsted Rail Company, Inc. ("Amsted") states and alleges as follows:

### NATURE OF PLAINTIFF'S CLAIMS

Soetaert worked for Amsted for approximately seven months before suffering an on-the-job injury that resulted in a worker's compensation claim. The injury resulted in fourth degree burns to Soetaert's hand, which required multiple surgeries. Amsted fired him in retaliation for his worker's compensation claim and in violation of the Americans with Disabilities Act Amendments Act of 2008 ("ADA") and the Kansas Acts Against Discrimination ("KAAD").

Amsted alleges it dismissed Soetaert in May 2019 for safety violations related to the on-the-job injury eight months earlier (in September 2018). Amsted's reason for dismissal is pretext for discrimination, retaliation and worker's compensation retaliation.

Soetaert seeks to recover his lost wages and benefits, future lost wages, punitive damages and attorneys' fees.

**PARTIES**

1. Soetaert resides in Tonganoxie, Leavenworth County, Kansas.

2. Amsted is registered and authorized to do business in Kansas and maintains a registered agent at The Corporation Company, Inc., 112 S.W. 7th Street, Suite 3C, Topeka, Kansas 66603.

3. Amsted operates a plant in Muncie, Kansas, doing business as Griffin Wheel Company. Amsted's Muncie, Kansas plant manufactures wheels for locomotives and box cars.

4. Soetaert worked for Amsted at the Muncie, Kansas plant as a Cope and Drag Operator.

5. Amsted qualifies as an "employer" within the meaning of 42 U.S.C. § 12111(5) of the ADA and K.S.A. § 44-1002(b) of the KAAD.

6. Amsted's an entity that acts through its agents and employees. It's liable for the conduct of: its agents and employees, acting within the course and scope of their employment and agency; its own negligence and the acts of its agents that it knowingly ratifies; injuries incurred by its agents' performance of non-delegable duties, acts done by agents for which the agency relationship allows or assists the agent to perform; and acts its agents take by virtue of their position with Amsted.

**JURISDICTION AND VENUE**

7. Jurisdiction exists over Soetaert's ADA claims based upon 28 U.S.C. § 12101, *et seq*. Supplemental jurisdiction exists over Soetaert's KAAD claims based on 28 U.S.C. § 1367(a).

8. Jurisdiction also exists over Soetaert's ADA claims based upon 28 U.S.C. § 1331, which grants this Court jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States".

9. Jurisdiction exists over Soetaert's worker's compensation retaliation claim based on 28 U.S.C. § 1367.

10. Venue is proper in the United States District Court for District of Kansas pursuant to 28 U.S.C. § 1391 because the acts and omissions that form the basis for Soetaert's claims arose at his place of employment located in Muncie, Wyandotte County, Kansas.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Soetaert dual filed timely Charges of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Kansas Human Rights Commission alleging that Amsted engaged in the discriminatory and retaliatory actions raised in this lawsuit or, alternatively, all conduct alleged herein would have arisen from the investigation of such Charges.

12. The EEOC issued Notices of Right to Sue and Soetaert has brought this action within ninety (90) days from the issuance of those Notices.

13. Soetaert has fulfilled all conditions precedent to bringing his claims and has duly exhausted all administrative procedures prior to instituting this lawsuit in accordance with the law.

## FACTS COMMON TO ALL COUNTS

14. During the spring of 2018, Soetaert began working for Amsted's Muncie, Kansas plant, operating as Griffin Wheel Company ("Griffin").

15. The Griffin plant manufactures wheels for locomotives and box cars.

16. As part of Soetaert's employment, he worked in close proximity to liquid steel.

17. Due to the potentially dangerous consequences of working with liquid steel at temperatures in excess of 650 degrees Fahrenheit, Amsted required its newly hired employees to "shadow" experienced employees and it allegedly monitored the employees closely for

approximately ninety (90) days before the employee could operate potentially dangerous machinery without supervision.

18. Close supervision of an employee for the initial three-month period assured the employee's familiarity with the machinery and knowledge of necessary preventative steps under a variety of circumstances.

19. Soon after Amsted hired Soetaert, it violated its own ninety (90) day shadowing policy when management allowed him to operate a piece of machinery called the "cope rollover" without an experienced employee monitoring or supervising Soetaert.

20. The "cope rollover" was located on the plant's product assembly line at the splitter shack.

21. Amsted's safety manager, Tuesday Blome, questioned why Amsted permitted Soetaert to operate the equipment without supervision and advised that Soetaert should not operate machinery without an experienced employee to shadow him.

22. Blome notified Chris Wallace, the plant superintendent, and Lance Fink, the plant's production supervisor, that Soetaert was operating heavy machinery on the assembly line without supervision in violation of the company's ninety (90) day shadowing requirement.

23. Wallace advised Blome that Soetaert would continue to operate the machine regardless of her concerns.

24. After speaking with Blome, Wallace informed Soetaert to continue operating the cope rollover without supervision.

25. As plant superintendent, Wallace had final say regarding the matter.

26. During Soetaert's approximate seven (7) months of employment, he operated the cope rollover almost every night in the presence of his direct supervisor, coworkers and other members of Amsted's management.

27. In particular, he routinely reached over a railing to scrape off flaws from wheel molds.

28. Nobody ever told Soetaert that he couldn't reach over the railing to scrape off flaws from the molds.

29. No Amsted employee ever told him that he improperly operated the cope rollover or that he improperly carried out his duties.

30. On September 21, 2018, Soetaert suffered fourth degree burns to his hand and wrist while operating the cope rollover.

31. To appreciate the extent of Soetaert's burns, a third-degree burn extends to all layers of the skin. A fourth-degree burn injures the deeper tissues, such as muscle, tendons, or bone. The burn is often black and frequently leads to loss of the burned part.

32. At the time Soetaert suffered the fourth-degree burns, he was operating the cope rollover in a manner consistent with the limited training he received, and in the same manner he operated the machine throughout the first seven months of his employment.

33. While attempting to scrape off a flaw from a wheel mold when leaning over a railing, a clamp unexpectedly and without warning closed on Soetaert's hand. During the countless occasions on which Soetaert reached over the railing to scrape off a flaw from a wheel mold, never before had a clamp closed. However, on this occasion, for no apparent reason, the clamp closed trapping Soetaert's hand between the clamp and the wheel mold at a temperature of 650 degrees Fahrenheit.

34. Soetaert immediately began screaming for help. However, because of the noise level in the plant, nobody responded to his screams for an extended period. Soetaert was in extreme pain and close to unconsciousness. Fortunately, a co-worker happened to walk by and shut down the machine allowing Soetaert to pull his hand free.

35. Amsted typically provided its day shift operators with radios to immediately communicate with one another in an emergency. It did not issue radios to its night shift employees. By not issuing radios to the night shift, Soetaert could not promptly communicate with any of his coworkers or supervisor because of the plant's noise level. The delay in getting a coworker's attention exacerbated Soetaert's injury and emotional pain and suffering.

36. George Simpson, Soetaert's immediate supervisor, was advised of the nature and extent of Soetaert's injury. Soetaert begged Simpson several times to take him immediately to a hospital for emergency treatment. Instead of complying with Soetaert's pleas, Simpson contacted Auden Alarcon, the plant's processing supervisor, to advise him of the situation.

37. Neither Soetaert's co-workers nor his supervisor notified first aid or emergency personnel, including 911, nor did they request an ambulance.

38. Rather than contacting emergency services, Alarcon transported Soetaert to Providence Medical Center in his personal vehicle.

39. Once medical personnel at Providence Medical Center observed Soetaert's severe burns, it immediately transported Soetaert to the region's established burn unit at the University of Kansas Medical Center.

40. Had Amsted notified emergency personnel, they would have transported Soetaert directly to the burn unit at KU's Medical Center. The delay in obtaining treatment from the burn unit exacerbated Soetaert's injuries along with his pain and suffering.

6

41. Soetaert suffered such severe burns that he remained hospitalized for two days.

42. Soetaert filed a workers' compensation claim and sought benefits arising from the injuries and severe burns he sustained as a result of the September 21, 2018 incident.

43. Soetaert received treatment for his burn injuries from Amsted's workers' compensation provider.

44. To date, Soetaert has undergone five (5) surgeries, all performed by Amsted's workers' compensation provider.

45. Soetaert's most recent surgery occurred in late-February 2019. Amsted's worker's compensation provider released Soetaert to return to work in March 2019, approximately two months before Amsted terminated his employment on May 16, 2019.

46. Amsted's worker's compensation physician advised Soetaert after his February 2019 surgery to expect additional surgeries related to the fourth-degree burns.

47. Soetaert experienced severe depression and suicidal thoughts stemming from the fourth-degree burns. On several occasions, he requested but never received mental health counseling from the worker's compensation medical provider to address his mental health issues.

48. After Soetaert's surgery in February 2019, Amsted's worker's compensation provider released Soetaert to return to work with instructions that he wear a glove on his left hand and attend hand therapy three times a week. Thereafter, the plant's safety manager and the plant's human resources representative asked Soetaert if he was willing to return to the job he performed before the accident.

49. Soetaert informed Amsted that he was willing to resume working at his same job and that he believed he could perform the functions of his job despite the injury. Amsted never allowed Soetaert to return to his previous job.

50. Amsted never met with Soetaert or discussed with him the worker's compensation provider's instructions that Soetaert wear a glove on his left hand and attend hand therapy three times a week. Soetaert finished hand therapy on or about April 19, 2019, and Amsted dismissed Soetaert less than a month later.

51. On or about May 16, 2019, Amsted dismissed Soetaert.

52. Amsted stated that it terminated Soetaert in May 2019 for violating company protocol while operating the cope rollover in September 2018 – approximately 8 months earlier.

53. The dismissal, including the alleged reason for the dismissal, shocked Soetaert.

54. His injury resulted from using the cope rollover in a manner consistent with his training. Amsted had not previously advised him that he improperly operated the cope rollover or that his conduct did not comply with the company's expectations.

55. Amsted dismissed Soetaert eight months after the September 21, 2018 on-the-job injury but tied the reason for dismissal to the injury.

56. Amsted took corrective action regarding the cope rollover shortly after Soetaert suffered the fourth-degree burns. It installed additional railing and netting around the machine and sprayed the entire workstation with yellow florescent paint to identify the work area as potentially dangerous. The changes reflect that Amsted had inadequate safety measures in place at the time Soetaert sustained the fourth-degree burns. In other words, Soetaert couldn't have violated Amsted's safety measures because it lacked the proper safety measures.

57. Amsted has proffered a pretextual reason for dismissing Soetaert. Its alleged reason contradicts management's numerous inquiries to Soetaert asking if he believed he could return to his job. Amsted concluded that his physical impairments limited his ability to perform his job.

58. Even though Soetaert assured Amsted that he could return to his former job, Amsted terminated his employment.

59. Despite Soetaert's worker's compensation provider releasing him to return to work operating the cope rollover, Amsted perceived him to be disabled and dismissed him.

60. Amsted dismissed Soetaert in retaliation for his worker's compensation claim, including to avoid the cost of future surgeries to his hand and wrist.

61. Amsted alleges that it dismissed Soetaert for violating company protocol in performing his job. However, Amsted didn't express reservations or concerns about his job performance before his injury. It only raised these concerns eight months after the injury and less than two months after Soetaert learned that he required reasonable accommodations to perform the essential functions of his job and additional surgeries related to the worker's compensation injury.

## COUNT I
### Disability Discrimination in Violation of the Americans with Disabilities Act Amendments Act, 42 U.S.C. § 12101 *et seq.*, and Kansas Acts Against Discrimination, K.S.A. § 44-1001 *et seq.*

62. Soetaert incorporates his allegations in paragraphs 1 through 61.

63. Amsted intentionally discriminated against Soetaert because of his disability.

64. At all times relevant to this action, Soetaert was a qualified individual with a disability within the meaning of that term as utilized by the ADA and KAAD, either as an individual with a physical impairment that substantially limits one or more of his major life activities, but who can perform all of the essential functions of his job with or without reasonable accommodation, or as a person who has a record of such an impairment, or as a person who is regarded as having such an impairment.

65. Soetaert was, and remains, able to perform the essential functions of his position as a Cope and Drag Operator with reasonable accommodation or without any accommodation.

66. Amsted discriminated against Soetaert on the basis of his disability when it (a) did not make reasonable accommodations to the known limitations of an otherwise qualified individual with a disability; (b) denied Soetaert employment opportunities and terminated his employment; (c) subjected Soetaert to different terms, conditions and privileges of employment than those available to non-disabled employees; (d) failed to engage in the interactive process to determine the necessity and availability of a reasonable accommodation; and (e) refused to accommodate and otherwise interfered with Soetaert's exercise of rights under the ADA and KAAD, which prohibit discrimination on the basis of a qualified disability, thereby violating the ADA and KAAD.

67. Amsted's actions as alleged above constitute violations of the ADA, 42 U.S.C. § 12101, *et seq.* and the KAAD, K.S.A. § 44-1001, *et seq.*

68. Soetaert's employees and management acted within the course and scope of their employment at all relevant times herein.

69. As a direct and proximate result of Amsted's discriminatory and unlawful acts, Soetaert has suffered and sustained damages, including, but not limited to, loss of past and future wages and benefits, emotional distress, humiliation and suffering, mental anguish, a detrimental employment record, and other non-pecuniary losses.

70. Through its employees, managers and agents, Amsted acted intentionally, maliciously, in conscious disregard for Soetaert's rights and the rights of others similarly situated and reflected a conscious indifference to his rights under the ADA and KAAD, entitling Soetaert to an award of punitive damages.

71. Soetaert is entitled to recover all his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Soetaert prays for judgment in his favor and against Amsted and requests an award of his actual damages as is fair and reasonable, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), including but not limited to compensatory damages, lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees.

## COUNT II
### Retaliation in Violation of the Americans with Disabilities Act Amendments Act, 42 U.S.C. § 12101 *et seq*., and Kansas Acts Against Discrimination, K.S.A. § 44-1001 *et seq.*

72. Soetaert incorporates his allegations in paragraphs 1 through 71.

73. Soetaert engaged in protected activity under the ADA and KAAD when he requested reasonable accommodations for his disability, including without limitation, wearing a glove on his left hand, attending hand therapy and the need for additional surgeries, which would have necessitated medical leave.

74. Amsted knew of Soetaert's protected activity.

75. The adverse acts taken against Soetaert included without limitation denying Soetaert's requested reasonable accommodations, failing to engage in the interactive process relating to the requested reasonable accommodations and ultimately terminating his employment.

76. A causal connection exists between Soetaert's protected activity and the adverse actions.

77. Amsted subjected Soetaert to unlawful retaliation in violation of the ADA, 42 U.S.C. § 12101, *et seq.*, and the KAAD, K.S.A. § 44-1001, *et seq.*

78. Amsted's employees and management acted within the course and scope of their employment at all relevant times herein.

79. As a direct result of the retaliation and unlawful acts of Amsted, Soetaert suffered and sustained damages, including, but not limited to, loss of past and future wages and benefits, emotional distress, humiliation and suffering, mental anguish, a detrimental employment record, and other non-pecuniary losses.

80. Through its employees, managers and agents, Amsted acted intentionally, maliciously, in conscious disregard for Soetaert's rights and the rights of others similarly situated, and reflected a conscious indifference to his protected rights under the ADA and KAAD, entitling him to an award of punitive damages.

81. Soetaert is entitled to recover all his costs, expenses, expert witness fees, and attorneys' fees incurred in this matter as well as other appropriate equitable relief.

WHEREFORE, Soetaert prays for judgment in his favor and against Amsted and requests an award of his actual damages as is fair and reasonable, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), including but not limited to compensatory damages, lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees.

## COUNT III
### Workers' Compensation Retaliation

82. Soetaert incorporates his allegations in paragraphs 1 through 81.

83. Soetaert filed a claim for workers' compensation and sought benefits as a result of his workers' compensation claim.

84. Soetaert's workers' compensation claim and the benefits he received along with anticipated future benefits as a result of the claim, were a motivating factor in his termination from employment by Amsted.

85. Soetaert suffered damages as a result of Amsted's retaliatory conduct in terminating his employment from Amsted.

86. Soetaert's termination was in retaliation for exercising his right to file a workers' compensation claim and for seeking workers' compensation benefits.

87. Amsted's retaliation against Soetaert caused him to sustain lost wages and loss of earning capacity.

88. Amsted's retaliation actions against Soetaert have caused him pain, anguish, anxiety and distress.

89. The actions and conduct set forth herein were outrageous and showed an evil motive or reckless indifference or conscious disregard for the rights of Soetaert, and therefore Soetaert is entitled to punitive damages from Amsted, to punish Amsted, and to deter Amsted and others from like conduct.

WHEREFORE, Soetaert prays for judgment in his favor and against Amsted and requests an award of his actual damages as is fair and reasonable, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), including but not limited to compensatory damages, lost wages and benefits, with interest through the date of trial, damages for emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, harm to reputation, loss of self-esteem, humiliation and other nonpecuniary losses, damages for future loss of wages and benefits, punitive damages, all costs including reasonable attorneys' fees.

## **JURY DEMAND**

Soetaert demands a trial by jury on all matters that may be so tried.

Respectfully submitted,

**COLANTUONO BJERG GUINN KEPPLER LLC**

By: /s/*Katherine I. Tracy*

Richard Guinn (KS # 10432)
Katherine I. Tracy (KS # 20807)
7015 College Blvd. Suite 375
Overland Park, Kansas 66211
913.345.2555
913.345.2557 facsimile
rg@ksmolaw.com
kt@ksmolaw.com

**ATTORNEYS FOR PLAINTIFF**

14